UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Joan Schoelwer, individually and on behalf   :   Case No. 1:14-cv-360
of others similarly situated,                           :

        Plaintiff,                         :

vs.                                       :

Omega Flex, Inc.,                     :

        Defendant.                      :

## ORDER

Before the Court is Defendant's motion to dismiss Plaintiff's complaint, pursuant to Fed. R. Civ. Proc. 12(b)(1) and (b)(6).  (Doc. 10)  Plaintiff opposes the motion (Doc. 11), and Defendant has filed a reply.  (Doc. 12)  Also pending is Plaintiff's motion for class certification (Doc. 2), filed shortly after the complaint.  Plaintiff asks the Court to stay its consideration of that motion pending class discovery.   Defendant opposes the certification motion (Doc. 5), and Plaintiff has filed a reply.  (Doc. 8)

For the following reasons, the Court grants Defendant's motion under Rule 12(b)(1), does not reach the issues under Rule 12(b)(6), and denies as moot the motion for class certification.

## FACTUAL BACKGROUND

Plaintiff's Complaint

Omega Flex manufactured and distributed TracPipe, a trade-branded type of corrugated stainless steel tubing ("CSST") that is used to transport natural gas in homes and commercial buildings.  CSST was developed as an alternative to fixed black iron

pipe which has been used for that purpose for many years.

Plaintiff's complaint alleges that in October 1999, Omega Flex published a TracPipe design and installation guide, instructing installers that TracPipe must be properly bonded to the building's electrical grounding system. By 2001, Omega Flex learned that TracPipe installed in a few homes in Tennessee was not properly bonded in accordance with its instructions. The complaint alleges that in eight homes in that state, TracPipe had been punctured by energy allegedly generated by an indirect lightning strike near the home. A puncture in CSST that is carrying natural gas can result in a fire or catastrophic loss. An engineer for Omega Flex, Mr. Rivest, testified in litigation arising out of an incident involving TracPipe that by 2002, "... we knew we had some sort of issue going on with [TracPipe] ...," which Rivest believed was its "[s]usceptibility due to nearby lightning strikes." (Compl. at ¶17) Omega Flex had learned that its bonding instructions for the product were not being uniformly followed or enforced. That knowledge led to efforts to develop a better product called CounterStrike I, which Omega Flex introduced in 2004. The complaint alleges that CounterStrike I, like TracPipe, must be properly bonded when installed. Omega Flex therefore continued its development effort to produce a better CSST that could withstand damage from electrical energy generated by indirect lightning strikes which finds a path to enter a home.

Omega Flex removed TracPipe from the market in 2011 when it introduced a new product called CounterStrike II. This new product was specifically designed to reduce the potential for lightning related damage to gas piping systems. (Compl. at ¶5) When TracPipe was removed from the market, Omega Flex stated in its advertising and

promotional brochures that TracPipe sold prior to 2011 "is a safe product also, but it has to be installed properly." (Compl. at ¶9) Plaintiff alleges that Omega Flex failed to acknowledge that many TracPipe installations in homes throughout Ohio are improperly bonded. Moreover, since TracPipe was first introduced, Omega Flex amended its installation instructions several times, including more stringent bonding procedures. But Omega Flex has not contacted homeowners such as Plaintiff about these new procedures.

Plaintiff also alleges that the 2002 National Fuel Gas Code required all CSST manufacturers to prepare and distribute proper design and installation instructions for CSST, and to train their installers. (Compl. at ¶47) And the 2009 Code adopted new requirements for direct bonding of CSST to a building's grounding conductor. The complaint alleges that Omega Flex failed to train its installers about the new Code requirements and Omega Flex's amended installation instructions. It also alleges that Omega Flex historically issued cards to installers who completed Omega Flex's certification program, but the cards lacked expiration dates. Thus, an installer who has not been trained on the current Code and Omega Flex's installation instructions could present a card to a distributor, and purchase CSST components.

In 2012, the National Association of State Fire marshals embarked on a "Yellow CSST Safety Campaign" designed to raise public and local enforcement authorities' awareness of proper bonding requirements for old-style "yellow" CSST (which includes TracPipe). As part of this national campaign, many state and local fire marshals began issuing recommendations that installed CSST systems be inspected for proper electrical bonding.

Plaintiff, Joan Schoelwer, owns a home in Cincinnati.  She alleges that TracPipe was installed in 2007.  (Compl. at ¶62)  She does not allege who installed it.  In 2013, Schoelwer had her home inspected to determine if the TracPipe was properly bonded.  A licensed contractor discovered that it was not, and on March 20, 2014, Schoelwer paid $578 to have the TracPipe properly bonded.  She alleges that she and members of the putative class she seeks to represent seek to recover damages resulting from Omega Flex's conduct and practices concerning TracPipe.  These include out of pocket costs to inspect and remedy the faulty installation; a loss of her "benefit of the bargain" in the difference between TracPipe as originally warranted and as installed; and an alleged diminution in the resale value of her home.  (Compl. at ¶74)

She seeks to represent a class defined as: "All persons or entities in the State of Ohio who own a house, or other structure, in which Omega Flex's TracPipe is installed." (Compl. at ¶75)  She identifies several questions of law and fact common to the proposed class, including but not limited to whether TracPipe is inherently defective; whether it was in an unreasonably dangerous condition when it was manufactured or distributed; whether it was sold with unsafe and unreasonably dangerous installation instructions; and whether Omega Flex failed to adequately warn of foreseeable risks of using TracPipe.  (Compl. at ¶77)

Based on these allegations, Schoelwer brings three common law claims: a claim that TracPipe is defective in design and manufacture (Count 1); a tort claim for breach of the implied warranty (Count 2); and negligent failure to warn (Count 3).  She seeks compensatory and punitive damages, and declaratory relief requiring Omega Flex to notify all Ohio homeowners of the need to inspect and, if necessary, have their TracPipe

properly bonded.

Procedural History

Schoelwer previously sued Omega Flex in this district in July 2013.  (Schoelwer v. Omega Flex, S.D. Ohio Case No. 1:13-cv-496.)  In her complaint in that case, she alleged that TracPipe is defective and unreasonably dangerous, and must be removed from all structures in which it is installed.  She cited an expert's opinion that, in order to prevent CSST-related fires caused by transient electric energy generated from indirect lightning strikes, a homeowner has three options: remove all natural gas piping and use only electricity; remove all CSST and replace it with black iron pipe; or install a code-approved lightning arrestor system.  (Case No. 13-cv-496, Doc. 1 at ¶37)  She cited a report from the National Fire Protection Association, stating that as of August 2011, 141 residential fires involving lightning and all brands of CSST had been reported throughout the United States.  (Id. at ¶39)  Schoelwer alleged claims for defective design and manufacture; defective design under Ohio's product liability statute, Ohio Rev. Code. 2307.75; failure to warn under O.R.C. 2307.76; breach of implied warranty under common law and O.R.C. 1302.27; and negligent failure to warn.

Omega Flex filed a motion to dismiss, raising a variety of arguments.  (Doc. 6) As pertinent here, Omega Flex argued that Schoelwer lacked Article III standing because she did not plausibly allege an injury in fact.  She did not claim that the TracPipe in her home failed or caused any injury or damage.  Omega Flex argued that her statutory product liability claims were barred by the economic loss doctrine, and that Ohio's products liability statute abrogated her common law claims.  And it argued that  her implied warranty claim was time-barred and failed to state a claim due to a lack of

privity.  After the motion was fully briefed, the district court heard oral argument on January 8, 2014.  During that hearing, the court questioned whether the alleged risk of an indirect lightning strike somewhere near Schoelwer's home was sufficient to establish her standing.  Plaintiff's counsel argued it was, but urged that if the court was inclined to grant the motion, the dismissal of Schoelwer's claims should be without prejudice, "because we have a client who is going to incur very soon hard damages of replacing the defective [TracPipe]."  (See Doc. 12-1, Transcript of Motion Hearing in Case No. 13-cv-496, at 42.)  Two days later, Schoelwer voluntarily dismissed her complaint.

Following that dismissal, Schoelwer's counsel informed Omega Flex that she intended to have the Trac Pipe in her home "bonded in the near future," and invited Omega Flex to inspect her home before any alterations were done.  (See Doc. 10, Ex. 2, Scanlan Affidavit.)  On February 27, 2014, at Omega Flex's expense, Schoelwer's TracPipe was inspected and found to be improperly bonded in accordance with Omega Flex's December 2005 design guide and installation instructions.  Mr. Scanlan, Omega Flex's General Counsel, was present that day and brought with him a licensed electrician.  Scanlan offered to have the electrician perform the bonding work at no cost to Schoelwer, "in the interest of customer relations."  (Id. at ¶4)  Schoelwer declined the offer (reiterated in a letter after the inspection), and hired someone else to do the work.

Schoelwer filed her complaint in this case on May 5, 2014.  Before Omega Flex had appeared in the action, she filed a motion for class certification but asked the Court to stay a decision pending class discovery.  (Doc. 2)

Omega Flex's Motion to Dismiss

-6-

In its motion, Omega Flex argues (as it did in the prior case) that Schoelwer lacks standing to pursue her claims, because she has not plausibly alleged an injury in fact. Her voluntary decision to incur costs to have the TracPipe properly bonded to avoid speculative harm that is not imminent and might never occur, is insufficient to establish an injury in fact. Moreover, Schoelwer has not alleged an injury that is causally related to Omega Flex's conduct or failure to act. Omega Flex did not install the TracPipe, and any installation errors were the result of the installer's conduct. Omega Flex further argues that Schoelwer rejected its offer of full relief (payment of the inspection and bonding costs) prior to the filing of this lawsuit, which bars her claims.

In addition to lack of standing, Omega Flex argues that Schoelwer's complaint fails to allege facts sufficient to support a plausible claim for relief. Ohio products liability law requires a plaintiff to show that she has sustained an actual injury proximately caused by an alleged breach of a manufacturer's duty. She has not plausibly alleged that Omega Flex caused her any injury, because the injury she alleges (cost to bond the TracPipe) was the result of the installer's conduct. Schoelwer has not sufficiently alleged that the TracPipe was defective at the time it left Omega Flex's control. Finally, Omega Flex contends that all of Schoelwer's common law claims have been abrogated by the Ohio products liability Act, O.R.C. 2307.71(b), et seq.

Schoelwer disagrees with all of these arguments. She contends that at this early stage of the case, her allegations must be taken as true. Natural gas is dangerous, and improper installation of natural gas lines can lead to serious injury or harm. The TracPipe as installed in her home was unsafe, and therefore was not performing its intended and designed function. Schoelwer paid the costs to mitigate this problem,

which she alleges was caused by TracPipe's negligence.  That injury is not speculative.

She also contends that she did not receive the "benefit of the bargain" when she

purchased TracPipe, and that it diminished the resale value of her home, injuries that

are sufficient to confer standing.  With respect to her specific claims, Schoelwer argues

that her complaint plausibly alleges common law product liability claims that are not

abrogated by the Ohio statute.

**DISCUSSION**

Standard of Review

A plaintiff's standing to sue is a threshold inquiry that determines "... the power of

the court to entertain the suit. ... The Art. III judicial power exists only to redress or

otherwise to protect against injury to the complaining party, even though the court's

judgment may benefit others collaterally. A federal court's jurisdiction therefore can be

invoked only when the plaintiff himself has suffered "some threatened or actual injury

resulting from the putatively illegal action …".  Warth v. Seldin, 422 U.S. 490, 498

(1975)(internal citations omitted).  "Standing under Article III of the Constitution requires

that an injury be concrete, particularized, and actual or imminent; fairly traceable to the

challenged action; and redressable by a favorable ruling."  Monsanto Co. v. Geertson

Seed Farms, 561 U.S. 139, 149 (2010) (internal citation omitted).

In reviewing a motion to dismiss for lack of standing, as well as under Rule

12(b)(6), a court must accept the complaint's well-pleaded factual allegations.  A claim

will survive if those allegations are "enough to raise a right to relief above the

speculative level on the assumption that all of the complaint's allegations are true."

Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir. 2008), citing Bell Atlantic Corp.

v. Twombly, 550 U.S.544 (2007).  Twombly essentially retired Rule 8's permissive "no-set-of-facts" pleading standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Twombly court found that literal application of that standard impermissibly permits wholly conclusory claims to survive Rule 12 challenges.  And in Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Court expressly held that a complaint will survive a Rule 12 challenge only if its well-pleaded factual allegations are sufficient to state a claim for relief that is plausible on its face.  Facial plausibility requires pleading facts that permit a reasonable inference that the defendant is liable for the alleged misconduct.  If a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. at 678 (quoting Twombly, 550 U.S. at 556-557).

Plaintiff's Standing

Omega Flex argues that Schoelwer's complaint fails to plausibly allege that TracPipe has caused or will cause an injury that is concrete, actual and imminent.  Her allegations of possible or hypothetical future injury if a nearby lightning strike might generate an electrical current that might enter her house and might puncture the TracPipe, are insufficient to show an injury in fact.   Moreover, her asserted injury (the cost to properly bond the TracPipe) is not fairly traceable to Omega Flex, but to the unknown third-party installer.  Choosing to expend funds to avoid a hypothetical injury that is not concrete or imminent is insufficient.  And even if her out-of-pocket cost amounts to a sufficient injury-in-fact, Omega Flex offered to compensate Schoelwer for that cost.  Therefore, there is no injury that a court order or judgment could redress.

In Monsanto, the Supreme Court found that organic and conventional alfalfa

farmers had standing to challenge a governmental order partially deregulating a strain of genetically modified alfalfa.  The farmers alleged that permitting deregulation would result in a substantial risk of gene flow between their organic or conventional alfalfa fields, and the fields of genetically modified alfalfa.  Deregulation would require the farmers to test their crops for purity and obtain additional certifications that their alfalfa was not contaminated by genetically modified alfalfa.  Other farmers alleged that deregulation would increase their costs to breed alfalfa strains that could avoid potential contamination, and to secure foreign growing sites, where GMO crops are banned and that would avoid the risk entirely.  There was evidence presented that genetically modified seed fields were planted in locations close to and even among the conventional and organic fields, and that cross-contamination by pollinating bees or by the wind would in fact occur, even though it may not occur in every plant or in every field.  The Supreme Court held that these increased costs and burdens, which the farmers must absorb even if their own crops were shown to be free of genetically modified alfalfa genes, were sufficiently concrete to satisfy the injury-in-fact requirement for constitutional standing.  Schoelwer argues that her factual allegations are very similar to those of the farmers in Monsanto, and that she need not wait until a stray lightning strike has actually damaged her TracPipe in order to proceed.

Omega Flex disagrees, and argues that Schoelwer's claims are more like those found wanting in Clapper v. Amnesty Int'l USA, 133 S.Ct. 1138 (2013).  There, the Supreme Court held that plaintiffs lacked Article III standing to challenge the constitutionality of a section of the Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. §1881a, permitting the government to conduct national security surveillance of

individuals outside the United States. Plaintiffs were attorneys, human rights activists, and media groups who regularly communicate with foreign individuals who were likely to be targets of government surveillance due to their contacts with terrorist groups, or their presence in certain areas of the world that are a special focus of the government's surveillance efforts. Plaintiffs alleged that their communications with these individuals were sensitive and often privileged, and that they had standing to sue based upon the objectively reasonable likelihood that their communications will be intercepted at some point in the future. They also alleged that they must undertake costly and burdensome measures to protect the confidentiality of their communications, costs that are "fairly traceable" to the statute. The Supreme Court rejected these arguments, citing its prior decisions repeatedly holding that a threatened injury must be "certainly impending" to constitute an injury-in-fact, and that allegations of possible future injury are not enough. Id. at 1147. The court found plaintiffs' allegations rested on speculation that the government might, at some point, seek authorization to intercept their communications. Omega Flex argues that Schoelwer's alleged injury is similarly speculative, and not "certainly impending."

Omega Flex cites several cases dismissing similar product claims involving TracPipe and other CSST brands, finding that an unrealized potential threat of future damage was not a sufficient injury-in-fact. In Hasley v. Ward Manufacturing, 2014 U.S. Dist. LEXIS 92155 (D. Maryland, July 8, 2014), the court dismissed strict liability and negligence claims against the manufacturer of a CSST product called Wardflex. Plaintiffs alleged that Wardflex is unreasonably dangerous because it is susceptible to perforation by an electrical arc generated by a lightning strike, which can cause and has

-11-

caused fires, damage to and destruction of residential structures, ...".  Id at **2-3.  The court found that the "threat of harm is not imminent, and the harm is not cognizable."  The court particularly noted plaintiffs' allegations that CSST was installed in over 5 million homes nationally, while only 141 fires have been reported from lightning strikes occurring near homes with CSST.  A similar result was reached in Mariani v. Titeflex Corp., 2014 U.S. Dist. LEXIS 94393 (D. Col., May 30, 2014), dismissing plaintiff's product defect claims against a CSST manufacturer for lack of standing.

In addition, the First Circuit recently affirmed the district court's dismissal of similar claims against another CSST manufacturer, because the plaintiff lacked standing.  In Kerin v. Titeflex Corp., 770 F.3d 978, 2014 U.S. App. LEXIS 21057 (1st Cir. 2014), plaintiff alleged that Titeflex's product called Gastite was installed in his home.  Titeflex developed a new product in 2012 called FlashShield that is much more resistant to the risk posed by an indirect lightning strike.  Gastite remains installed in buildings throughout the country, and had not been banned from use in those installations.  The court cited the fact that the current National Fuel Gas Code permits the installation of CSST with proper bonding and grounding to mitigate any lightning risk.  Plaintiff did not allege that his home had been damaged or that he had suffered any actual harm, but sought to recover the cost to remedy the safety issues posed by Gastite, and the loss of his benefit of the bargain in overpaying for Gastite.  Id. at *4.

The First Circuit noted that cases claiming standing based on risk "require caution, because ... the alleged present injury depends on the plaintiff's response to an increased risk, and whether his or her response constitutes a reaction for which compensation is owed or constitutes a mere attempt to 'manufacture standing.'"  Id. at

*7-8 (internal citations omitted).  When a present injury is linked to a statute or regulation or an accepted standard of conduct that has been or will soon be violated, standing is more easily established.  But in cases where the present injury is "entirely dependent on the alleged risk of future injury," the standing inquiry is heightened.  The court recognized that the alleged risk of harm could be severe, but it concluded that plaintiff failed to show anything but a remote risk of CSST causing a lightning fire in his home.  The risk was "too speculative to give rise to a case or controversy."  Id. at *16.

Cases involving other products have reached similar conclusions.  For example, in U.S. Hotel and Resort Management v. Onity, Inc., 2014 U.S. Dist. LEXIS 103608 (D. Minn., July 30, 2014), a group of hotel operators brought product claims against the manufacturer of hotel room door locks.  Plaintiffs alleged that the locks were defective because they could be easily opened by unauthorized persons using a homemade device to evade the lock's sitecode.  Relying on Clapper, the district court held that the alleged injury (costs to replace the locks to prevent potential unauthorized access) was not certainly impending, and was not fairly traceable to the defendant's actions.  And in Harrison v. Leviton Manufacturing Co., 2006 U.S. Dist. LEXIS 76334 (N.D. OK, October 19, 2006), plaintiff alleged that defendant's push-in electrical receptacles were unreasonably dangerous because their design increased the risk of electrical fires.  Plaintiff alleged that he intended to replace all of the push-in receptacles in his home, but did not allege that the wiring in his home was damaged or that he had experienced a fire or any other damages.  The district court dismissed his clams for lack of standing, finding that he had not alleged a concrete injury-in-fact.

Omega Flex also cites a number of cases arising from data breaches caused by

-13-

"hackers" stealing personal information stored on computer systems.  For example, in Galaria v. Nationwide Mutual Ins. Co., 998 F.Supp.2d 646 (S.D. Ohio 2014), plaintiffs brought a lawsuit against Nationwide after the company notified them that their personal information had been hacked from Nationwide's computers.  Nationwide recommended that they take steps to protect their credit and identities, and offered one year of free credit monitoring and identity theft protection.  Plaintiffs brought statutory and tort claims against Nationwide, alleging that they faced an increased risk of harm from the theft of their personal information, and would incur costs and expenses to mitigate that risk.  Citing Clapper, the district court found that plaintiffs lacked standing because they had not sufficiently pled an injury in fact.  Their allegations of increased risk of harm were not enough, as none of the plaintiffs alleged that their information had actually been misused, or that any of them had experienced identity theft.  The district court found that their complaint "does not sufficiently allege that the injury of identity theft, identity fraud, medical fraud, or phishing is certainly impending.  Therefore, the increased risk of such injury does not suffice to confer standing.  Additionally, they cannot create standing by choosing to make expenditures in order to mitigate a purely speculative harm."  Id. at 658-659.

Schoelwer argues that the risk she faces from TracPipe is "certainly impending," because Omega Flex concedes that its product must be properly installed and bonded in order to be "safe."  (She also disputes any contention that TracPipe is "safe" even if it is properly bonded.)   Omega Flex allegedly failed to properly instruct its authorized installers, despite its knowledge of the risk posed by improperly installed TracPipe.  Schoelwer paid to mitigate that risk, an actual cost she argues is certain and sufficient

-14-

to establish standing. She contends that cases involving a future risk of injury caused by a defective medical device are more analogous to her claims than is <u>Clapper</u>, where the Supreme Court acknowledged that it was applying an "unusually rigorous" standing analysis due to a separation-of-powers concern. <u>Clapper</u>, 133 S.Ct. at 1147. She also distinguishes the data breach cases as involving merely speculative future harm due to third party criminal conduct.

She cites <u>Sutton v. St. Jude Med. S.C., Inc.</u>, 419 F.3d 568 (6th Cir. 2005), where the Sixth Circuit held that plaintiff had established an injury-in-fact caused by an implanted defective heart device. The device was used in cardiac bypass surgery, allowing surgeons to attach vein grafts directly to the heart's surface without sutures. Plaintiff's device had not failed or caused him any injury. But he alleged that numerous other patients had suffered collapse and scarring of the graft site, which required removal of the device and regular monitoring to avoid further harm. His complaint sought medical monitoring costs, and alleged that the device unreasonably increased his risk of developing aortic bypass stenosis or an occlusion. <u>Id</u>. at 569. The district court dismissed his complaint because he did not sufficiently allege "... any information from which to assess his allegedly increased risk of harm from implantation of the aortic connector." The Sixth Circuit reversed the district court, finding that the court improperly evaluated the merits of plaintiff's claim for purposes of the threshold standing inquiry. <u>Id</u>. at 571. The court of appeals found that plaintiff had sufficiently alleged a concrete harm, a risk of aortic stenosis caused by the implanted device, and that he was not simply alleging an unquantified or unknown risk of possible future injury from some external factor. In a case discussed in <u>Sutton</u> (<u>In re St. Jude Medical, Inc.</u>, 2003 U.S.

-15-

Dist. LEXIS 5188 (D. Minn. Mar. 27, 2003)), a plaintiff alleged that his implanted heart valve caused a 700 percent increase in valve leaks, as compared to conventional heart valves.  The Sutton court observed that such a large increase in the risk of future harm "clearly establishes an injury in fact," but that the plaintiff in Sutton need not demonstrate a similar heightened increase in order to establish Article III standing. Schoelwer suggests that the TracPipe in her home is like a defective medical device that will probably fail, that the improved CounterStrike II was far more able to withstand the effects of stray lightning strikes, and that she need not allege a specific level of heightened risk in order to proceed on her product claims.

The Court is not persuaded that Schoelwer's claims are like those involving implanted defective medical devices that have a known track record of failure causing injury, or like cases involving exposure to toxic substances (such as asbestos or radiation) with documented rates of exposure that cause disease.  In such cases, as Schoelwer notes, the courts have generally held that a plaintiff need not wait to suffer the injury or disease before bringing a medical monitoring claim.  The Sixth Circuit noted that such an approach would be "overly harsh and economically inefficient."  Sutton, 419 F.3d at 575.  But that observation does not mean that Schoelwer can simply allege the possibility of **any** future risk, no matter its scope or probability of occurrence, and establish her standing. This result is amply supported by the First Circuit's decision in Kerin v. Titeflex, and its discussion of standing in cases involving future risk.  See also, Reilly v. Ceridian Corp., 664 F.3d 38 (3d Cir. 2011), a data breach case where the Third Circuit affirmed the dismissal of plaintiffs' claims for lack of standing, because none of the plaintiffs had suffered any actual injury as a result of the stolen data.  The court

-16-

distinguished medical device and toxic tort cases from plaintiffs' claims that they faced an increased risk of future harm from identity theft.  The court noted that injury occurs immediately upon implantation of the defective device or actual exposure to a toxic substance: "[T]he damage has been done; we just cannot yet quantify how it will manifest itself."  More importantly, the court also distinguished medical device cases because they hinge on human health concerns.  Citing Sutton, the court observed that the "deceased, after all, have little use for compensation." Id. at 45.  And in Key v. DSW, Inc., 454 F.Supp.2d 684 (S.D. Ohio 2006), another data breach case where the district court  concluded that plaintiffs lacked standing, the court held that medical monitoring cases like Sutton "act as a narrow exception to the general rule of courts rejecting standing based on increased risk of future harm, and are also factually distinguishable from the present case." Id. at 690.

After considering the parties' arguments and the authorities discussed, the Court concludes that Schoelwer has not alleged an injury in fact that is sufficient to confer Article III standing.  She alleges that TracPipe is defective because personal injury or property damage might occur if stray lightning should strike near her home, and if an electrical current is generated by the lightning, and if that current should travel into her home, and if that current should blow a hole in the TracPipe.  In Hasley v. Ward Mfg., cited above, the district court cited plaintiff's allegation that 141 fires have been reported involving lightning strikes and all brands of CSST piping, and that the number of CSST installations in homes nationwide is over 5 million.  Schoelwer alleges that Omega Flex has 35% of the CSST market, and that there are thousands if not tens of thousands of TracPipe installations in Ohio alone.  (Compl. at ¶¶ 66, 76) This alleged risk of future

-17-

injury is not sufficiently certain or imminent to confer standing, as the reported cases involving similar CSST claims have found.[1]

Schoelwer's decision to incur costs to properly bond the TracPipe is comparable to the facts in the data breach cases, where plaintiffs voluntarily purchased credit risk insurance or identity theft protection to guard against the possibility that the hackers would sell or use their personal information.  Even though these plaintiffs alleged an actual economic loss due to the data breach, the possibility and magnitude of the alleged risk of harm was the crucial factor in analyzing plaintiffs' standing.

Schoelwer also alleges that she did not receive the "benefit of the bargain"  when she initially had TracPipe installed in her home, and that the product has caused a diminution in the resale value of the home.  Omega Flex responds that she has not sufficiently alleged any plausible "benefit of the bargain" damages, because her complaint includes no factual allegations that she bought the TracPipe from Omega Flex, that she paid Omega Flex to install it, or that she had any direct dealings of any kind with Omega Flex.  And she has not alleged that the product failed to perform its intended use, to transmit natural gas in her home.  This distinguishes Schoelwer's claims from those involving defective consumer products, such as moldy washing machines or automobiles equipped with defective air bags.  See, e.g., In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., 678 F.3d 409, 420 (6th Cir. 2012), affirming class certification of consumers who purchased washers that developed mold

_____

[1] In addition to the cases discussed above, see Hall v. Omega Flex, Inc., 2014 U.S. Dist. LEXIS 95304 (S.D. Fla. 2014), dismissing a very similar class action complaint for lack of standing; and Roy v. Ward Mfg., 2014 U.S. Dist. LEXIS 117145 (D. Md. 2014).

during normal use.  The Sixth Circuit stated that the plaintiffs might be able to show an injury that occurred at the point of sale, when they paid a premium price for the defectively designed washer that resulted in mold accumulation.  Here, unless a stray lightning strike should generate a sufficient electrical current that might travel into Schoelwer's home, the product is performing its intended function.

Regarding Schoelwer's contention that the TracPipe caused a diminution in resale value of her home, Omega Flex contends that any such injury is entirely speculative.  The complaint specifically alleges that TracPipe is "inherently dangerous and unsafe because of its inability to adequately resist indirect lightning strikes **when it was not properly installed and/or bonded**."  (Doc. 1 at ¶87)  Schoelwer's TracPipe is now properly bonded, and was before she filed her complaint.  Schoelwer does not allege that she tried to sell her home and discovered any diminution in its potential sale price due to the presence of TracPipe.

Moreover, even if Schoelwer's decision to pay someone to inspect and bond the TracPipe were a sufficient injury in fact, Omega Flex offered to pay for those costs.  She refused the offer and paid the costs herself.  Omega Flex argues that the offer bars this lawsuit, citing cases holding that a named plaintiff who is offered full relief lacks a personal stake in the outcome.  See, e.g., Gates v. City of Chicago, 623 F.3d 389, 413 (7th Cir. 2010), finding plaintiffs' restitution claim moot because defendant had tendered the full amount sought in that claim immediately after plaintiffs filed a class action lawsuit.  Schoelwer rejects this contention, arguing that Omega Flex did not offer **full** compensation to her.  At best, it offered to absorb the out of pocket costs to inspect and

bond the TracPipe, but said nothing about her alleged benefit of the bargain damages, or the diminution of her home's resale value.  Schoelwer accuses Omega Flex of a "blatant attempt to pick-off Plaintiff as a class member," ... (Doc. 11 at 22) and ignoring members of the putative class.

The record does not support Schoelwer's accusation.  She filed her first lawsuit in July 2013.  After Omega Flex's motion to dismiss was fully briefed and argued, she voluntarily dismissed that lawsuit.  Schoelwer's complaint in this case was filed in July 2014, several months after the inspection of her TracPipe and Omega Flex's offer to her.  When Omega Flex made its offer, there was **no lawsuit pending**.  Her decision to file this lawsuit, and her premature motion for class certification, does not exempt her from establishing her own Article III standing in order to proceed.

Moreover, the out of pocket costs are the only damages that Schoelwer has plausibly alleged.  Her "benefit of the bargain" allegation is insufficient, as she does not claim any contractual relationship with Omega Flex, and she does not allege any actual damage or failure of performance of the TracPipe.  Her diminution in value argument is entirely speculative, as she has not alleged that she tried to sell her house and discovered some loss of value due to TracPipe's presence.

The Court concludes that Plaintiff lacks standing to prosecute the claims alleged in her complaint.  Based on this conclusion, the Court will not address Omega Flex's alternative arguments that the complaint fails to state a plausible claim for relief under Fed. R. Civ. Proc. 12(b)(6).

**CONCLUSION**

-20-

For all of the foregoing reasons, the Court grants Omega Flex's motion to dismiss for lack of subject matter jurisdiction (Doc. 10), because Schoelwer lacks standing to pursue her claims.  Her complaint is therefore dismissed.

The motion to certify a class and stay a ruling on that motion (Doc. 2) is denied as moot.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: December 16, 2014                    s/Sandra S. Beckwith
                                            Sandra S. Beckwith, Senior Judge
                                            United States District Court